```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
JEAN MARIE HANRETTY,

                 Plaintiff,            MEMORANDUM & ORDER
                                         20-CV-2315(EK)
         -against-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiff Jean Marie Hanretty challenges the Social Security Administration's denial of her claims for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Hanretty's cross-motion.

## I.   Background

### A.   Procedural Background

On October 13, 2016, Hanretty applied for disability benefits and supplemental security income, alleging a disability onset date of October 1, 2016. Administrative Tr. ("Tr.") 10, ECF No. 10. The agency initially denied her claims. *Id.* On November 13, 2018, an administrative law judge ("ALJ") held a hearing on Hanretty's claims. *Id.* The ALJ concluded that Hanretty was not disabled and therefore not entitled to

benefits.  Tr. 19.  The Appeals Council denied Hanretty's request for review of the ALJ's decision, rendering it final.  Tr. 1.  Hanretty timely sought review of that decision in this Court.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P,

app. 1.  If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ found that Hanretty had not engaged in substantial gainful activity since the alleged onset date of her disability.  Tr. 12.  The ALJ also determined that she suffered from the "severe impairments" of obesity, carpal tunnel syndrome, and degenerative disc disease of the lumbar and cervical spine with disc bulging.  Tr. 13.  However, the ALJ also determined that none of these impairments rose to the level of a Listed Impairment.  *Id.*

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ concluded here that Hanretty had the RFC to perform "sedentary work" with limitations.  Tr. 13. Those limitations included that Hanretty can "lift and carry and push and pull 10 pounds [only] occasionally," "can stand and walk for two hours" and "sit for six hours" of an eight-hour day, and can "occasionally stoop, climb ramps and stairs, balance, kneel, crawl and crouch."  *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant

3

work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Hanretty could not perform her past work as a general clerk or a child monitor. Tr. 18. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). The ALJ determined that Hanretty could perform such jobs, including as a charge account clerk, call out operator, and addresser.[1] Tr. 19. Given that conclusion, the ALJ concluded that Hanretty was not disabled. *Id.*

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[2]

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind

---

[1] Also known as "addressing clerk," an addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing" and "[m]ay sort mail." *See 209.587-010 Addresser*, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 671797.

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

4

might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion

Hanretty raises four arguments on appeal. First, she argues that the ALJ erred in finding that she did not suffer from a listed impairment. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 19-22, ECF No. 12-1. Second, she argues that the ALJ failed to develop the record by not requesting additional information from two of Hanretty's physicians. *Id.* at 16-19. Third, she argues that the ALJ failed to provide legally sufficient reasons for rejecting Hanretty's own statements about the severity of her impairments. *Id.* at 22-25. Finally, she argues that the ALJ erred in relying on the vocational expert's testimony. *Id.* at 25-27.

**A.   Listed Impairment Analysis**

Hanretty contends that the ALJ erred in concluding, at step three, that none of her impairments equaled the severity of a Listed Impairment. In particular, Hanretty invokes her spine problems, arguing that they met Listing 1.04A. That listing refers to "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture)

5

resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" combined with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A (effective Apr. 2, 2018). The Second Circuit has broken down Listing 1.04A into a "threshold requirement" of a spinal disorder (such as a herniated nucleus pulposus, *i.e.*, a herniated disk) plus a series of "other definitional criteria." *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888-89 (2d Cir. 2007).

These "other definitional criteria," as set forth in the block quote above, comprise four requirements: (1) "evidence of nerve root compression characterized by neuro-anatomic distribution of pain," (2) "limitation of motion of the spine," (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and, (4) if, as here, there is involvement of the lower back, positive straight-leg raising tests. *Woods v. Saul*, No. 19-CV-0336S, 2021 WL 848722, at *13-14 (S.D.N.Y. Mar. 5, 2021); *accord Knight v. Astrue*, 32 F. Supp. 3d 210, 219 (N.D.N.Y. 2012). To show that her medical conditions meet or equal that Listing, a claimant must show that all four criteria are met. *See Sullivan*

6

*v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *see also Otts*, 249 F. App'x at 888 ("It was [Claimant's] burden to demonstrate that her disability met *all* of the specified medical criteria of a spinal disorder.").

Hanretty has not shown that the ALJ erred in concluding that her spinal problems did not satisfy Listing 1.04A. The claimant bears the burden of proof at step three. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Moreover, "the absence of an express rationale does not prevent [a court] from upholding the ALJ's determination regarding [a claimant's] claimed listed impairments, [if] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam).

Here, the ALJ gave "[s]pecific consideration" to Listing 1.04 and determined that "the medical evidence does not establish the requisite evidence of nerve root compression" as required by Listing 1.04A. Tr. 13.³ The ALJ did not discuss the

---

³ Hanretty does not challenge the ALJ's determination that the medical evidence did not establish the presence of "spinal arachnoiditis" or "lumbar spinal stenosis" as required by Listings 1.04B and 1.04C, respectively. *See* Tr. 13.

7

reasoning for this conclusion in that section. However, in the following pages, the ALJ examined the medical evidence in detail. That evidence shows the ALJ did not err in determining that Hanretty had not established nerve compression. As the ALJ noted, a cervical MRI taken in November 2016 showed "broad-based disc bulges," but "without impingement on the cervical [nerve]." Tr. 14 (citing Tr. 260). An MRI taken the next month showed that a "L5-S1 disc herniation impinges upon the right lateral recess and foramen abutting the right L5 exiting nerve root"; however, no impingement of a nerve was noted. Tr. 346; *see also* Tr. 14-15. (Notably, a "foramen" is "[a]n aperture or perforation through a bone or a membranous structure" and is not itself a nerve. *Foramen*, *Stedman's Medical Dictionary*, Westlaw (database updated Nov. 2014).) Then, in May 2018, a cervical MRI showed that although Hanretty had a "[c]oncentric bulging disc at the C6-C7 level," there was no evidence of "cervical cord [*i.e.*, spinal cord near the neck] compression." Tr. 318; *see also* Tr. 16. Additionally, a lumbar spine MRI showed "[c]oncentric bulging discs at the L3-L4, L4-L5 and L5-S1 levels without evidence of lumbar disc herniation, conus or cauda equina compression."[4] Tr. 319; *see also* Tr. 16. Based on these

---

[4] Both the conus medullaris and the cauda equina are comprised of nerves. *See Xydous v. Comm'r of Soc. Sec.*, No. 14-CV-3691, 2015 WL 5774806, at *4 (E.D.N.Y. Sept. 29, 2015) ("Conus medullaris refers to the tapering lower extremity of the spinal cord."); *Posey v. Saul*, No. 19-CV-4578, 2020 WL

8

results, a radiologist concluded that "[n]o cord compression or abnormal signal in the spinal cord is identified." Tr. 322. These records provide substantial evidence for the ALJ's conclusion that Hanretty had not established nerve compression.

Hanretty points to a 2017 report by Dr. Sonstein indicating that the bulging in her L5-S1 disk revealed "maybe some contact of the right L5 nerve root." Tr. 323; see Pl. Mem. 21. The ALJ did not specifically discuss this finding when evaluating Dr. Sonstein's evidence. See Tr. 15. But even if such contact did actually exist, "[m]usculoskeletal impairments frequently improve with time or respond to treatment." Listing 1.00H(1). Thus, the ALJ was entitled to find on the basis of the newer, 2018 MRI that any nerve impingement had improved — especially given the qualifier ("maybe") in the earlier observation. See Robinson v. Saul, No. 18-CV-1605, 2020 WL 652515, at *5 (D. Conn. Feb. 11, 2020) (Listing 1.04A was not established where "substantial evidence supports the ALJ's determination that the more recent medical evidence . . . did not reveal any nerve root impingement or compression as required by this listing").[5]

---

4287359, at *3 (E.D.N.Y. July 27, 2020) ("The cauda equina comprises the roots of all the spinal nerves below the first lumbar.").

[5] As discussed, failure to show nerve compression alone establishes that Hanretty was not entitled to a finding that she met the requirements of Listing 1.04A. However, substantial evidence also shows that Hanretty did not suffer from the requisite motor and sensory loss. As the ALJ discussed, the record contains evidence of normal motor strength. Tr. 15-17. Various

For these reasons, the ALJ did not err in finding that Hanretty did not meet the requirements of Listing 1.04A.

**B.  Duty to Recontact Treating Physicians**

Hanretty argues that the ALJ erred in according "little weight" to two statements by Hanretty's doctors stating she is disabled.  Pl.'s Mem. 16-19; *see* Tr. 16.  Specifically, on November 8, 2016, Dr. Garrett W. Moss conducted an orthopedic examination and concluded that Hanretty was "currently 100% disabled."  Tr. 273.  And on November 18, 2017, Dr. Georges Labaze examined Hanretty after she suffered a car accident and concluded she was "likely disabled" because Hanretty was "reporting that her pain is preventing her from working.  Tr. 301-03.

Invoking 20 C.F.R. § 404.1512(d) and (e), Hanretty argues that the ALJ was required to obtain further information from these doctors to "assess their findings."  Pl.'s Mem. 18.  But the duty that Hanretty is invoking no longer exists.  "On March 26, 2012, [Section 404.1512] w[as] amended to delete the provision that imposed a duty to recontact a treating physician when the report from a claimant's medical source contains a

---

examinations documented that Hanretty possessed full strength.  *See, e.g.*, Tr. 270 ("Hand and finger dexterity intact.  Grip strength 5/5 bilaterally."); Tr. 305 ("grossly normal strength/tone").  Similarly, Hanretty demonstrated intact sensation at multiple examinations.  *See* Tr. 15, 328, 341, 342, 343, 344.

10

conflict or ambiguity that must be resolved [or] the report does not contain all the necessary information . . . ." *Mura v. Colvin*, No. 16-CV-6159P, 2017 WL 2543939, at *4 n.6 (W.D.N.Y. June 13, 2017). Thus, where a treating physician's opinion is ambiguous, the ALJ now has "discretion to determine the best way to resolve the inconsistency or insufficiency based on the facts of the case." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014). Here, the ALJ ordered a consultative examination, satisfying his duty, and Hanretty does not challenge the ALJ's weighting of that examination. *See* 20 C.F.R. § 404.1520b(b)(2)(iii) (the "best way to resolve the inconsistency or insufficiency" of the evidence may include a "consultative examination at [the agency's] expense").

**C.   Pain and RFC Determination**

Hanretty next argues that the ALJ improperly discredited her subjective complaints of pain in evaluating her RFC. Before the ALJ, Hanretty testified that even while sitting in the hearing, she was suffering from "horrible, horrible, horrible," "excruciating pain" in the form of a "burning sensation" that was "shooting" down her legs and up into her back and arm. Tr. 41. She described herself as unable to stand or walk for more than five minutes at a time, lift over five pounds, squat, or kneel. Tr. 45-47. She testified that her knees frequently "give out" and that she often must walk with

11

the aid of a carriage or shopping cart. Tr. 46–47. She also indicated that she could not carry her baby, Tr. 46, though a September 2018 urgent care record (made three months before the hearing) indicates that she was able to pick up her 23-pound baby and "put[] her on her left side." Tr. 377.

Had the ALJ adequately weighted such complaints, Hanretty contends, he would inevitably have concluded that Hanretty was disabled. Instead, the ALJ determined that Hanretty's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 14. The ALJ based this conclusion on the "routine" and "conservative[]" treatment that Hanretty's physicians prescribed and the physical examinations that demonstrated less severe restrictions than Hanretty described. Tr. 17.

The subjective experience of pain can support a finding of disability if "the claimant ha[s] been determined to be suffering from an impairment whose existence was established by medical findings." *Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983). "[W]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). At the same time, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*,

12

712 F.2d 1545, 1552 (2d Cir. 1983). Rather, "[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Id.; see also Gallagher*, 697 F.2d at 84 ("Once such an impairment has been diagnosed, pain caused by the impairment may be found to be disabling even though the impairment ordinarily does not cause severe, disabling pain . . . .").

The ALJ did not err in this case. Substantial evidence, both objective and subjective, supported the conclusion that Hanretty could perform sedentary work (with the expressed limitations) despite her pain. The ALJ noted that both Hanretty's neurologist and her orthopedist "documented that [Hanretty] should be treated conservatively" for her pain. Tr. 17, 42, 273, 323-24, 336-44; *see Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (an ALJ may consider a claimant's conservative treatment as evidence supporting the ALJ's determination); *Dowling v. Berryhill*, No. 16-CV-4784, 2018 WL 472817, at *9 (E.D.N.Y. Jan. 18, 2018) ("The Court finds that the Plaintiff's conservative treatment regimen also indicates that she is not as restricted as she asserts.").

Moreover, the ALJ noted that examinations "consistently documented that [Hanretty] had a normal gait and either 4/5 or 5/5 strength in all muscle groups." Tr. 17, 42. Indeed, despite her complaints, Hanretty generally appeared in

13

no acute distress. *See* Tr. 270, 282, 302, 323, 326, 364, 366, 368, 390, 392, 394. And Hanretty generally demonstrated full motor strength, intact sensation, and no pain with straight leg raises. Tr. 20-21, 251, 282, 347-48, 356, 360, 454-55. The ALJ also considered Hanretty's daily activities, including that she was able to cook, do laundry, go grocery shopping, and take public transportation. *Id.* at 21-22, 454; *see Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's daily activities undermined disability allegations). Moreover, contrary to her testimony, the record shows that Hanretty was able to pick up her baby as of three months before the hearing. Tr. 377; *see Vennor v. Colvin*, No. 15-CV-6385, 2016 WL 3181171, at *5 (W.D.N.Y. June 3, 2016) (ALJ appropriately "analyzed the medical evidence and concluded that the objective findings failed to provide strong support for Vennor's allegedly disabling symptoms and limitations"); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[T]he ALJ . . . is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.").

The ALJ considered this evidence against Hanretty's claims of pain and supporting evidence and appropriately determined that her pain was not fully disabling. *See Snell*,

177 F.3d at 135 (ALJ is in better position to assess claimant's credibility). In recognition of Hanretty's serious but not disabling impairments, the ALJ limited her RFC to sedentary work with a number of limitations. The ALJ committed no legal error.

**D.    Vocational Expert Testimony**

Finally, Hanretty argues that the ALJ improperly relied on a vocational expert's ("VE") testimony that there were jobs in the national economy that Hanretty could perform despite her limitations. That argument is mistaken.

During Hanretty's hearing, the ALJ asked the VE what kinds of jobs a person with Hanretty's limitations could be expected to perform. Tr. 55-56. The VE responded that such a person could perform unskilled, light work in occupations such as a charge account clerk, a call-out operator, and an addresser. Tr. 56-57. The ALJ inquired: "Is that testimony consistent with the DOT [Dictionary of Occupational Titles]?" Tr. 57. The VE responded in the negative, explaining that "[t]hose jobs are based on my education, my experience and job monitoring." *Id.* Hanretty contends that the ALJ should have "inquire[d]" further and "elicit[ed] an explanation for any inconsistencies testified to by the VE." Pl. Mem. 27.

Contrary to Hanretty's assertions, the ALJ properly relied on the VE's testimony. In the Second Circuit, discrepancies between the testimony of a VE and the DOT are not

15

inherently problematic; the DOT describes occupations as they are "generally performed," while an expert may elucidate the specific "requirements of particular jobs." *Jasinski v. Barnhart*, 341 F.3d 182, 184-85 (2d Cir. 2003). Nevertheless, "whenever the Commissioner intends to 'rely[] on [a] vocational expert's testimony,' she must identify and inquire into all those areas 'where the expert's testimony seems to . . . conflict with the Dictionary." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019). The ALJ must then "obtain a reasonable explanation for any *apparent* – even if non-obvious – conflict between the Dictionary and a vocational expert's testimony . . . which the ALJ may accept as reasonable after evaluation." *Id.*

Here, however, there was simply no conflict with the DOT and the VE's testimony. Rather, the VE relied upon her own education and experience to answer a question to which the DOT did not provide a clear answer. *See* Tr. 54–57 (VE was able to answer ALJ's first hypothetical using the DOT, but had to answer based on her own education and experience for ALJ's second and third hypotheticals, which included specific limitations). This was plainly permissible. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) ("When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed

from their own 'experience in job placement or career counseling.'"); *Franklin v. Saul*, 482 F. Supp. 3d 250, 268 (S.D.N.Y. 2020) (the "VE did explain that she was relying on her experience in giving her testimony. The VE is allowed to rely on her experience in such circumstances."); *Hallman v. Comm'r of Soc. Sec.*, No. 19-CV-00683, 2020 WL 3259255, at *5 (W.D.N.Y. June 16, 2020) (Wehrman, M.J.) (accepting as reasonable the following explanation provided by the VE: "although the DOT doesn't address some issues such as being off task. For that testimony – it also does not address reaching, handling, fingering, and fingering in terms of direction; only in frequency. So for that testimony . . . I always rely on my experience in disability management."). The ALJ thus did not err by relying on the VE's testimony.

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies

Hanretty's motion. The Clerk of Court is respectfully requested to enter judgment and close this case.

    SO ORDERED.

                                          /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge

Dated:    July 6, 2022
            Brooklyn, New York